

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:CRH/SKW
F. #2020R00147

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2022

By Email and ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Ibrahim Alhussayen
Criminal Docket No. 22-471 (EK)

Dear Judge Komitee:

The government respectfully submits this memorandum in advance of the defendant's sentencing in the above-captioned case.

I. Factual Statement

The defendant is a 42-year-old citizen of the Kingdom of Saudi Arabia ("KSA") who was funded by the KSA government to live in the United States in order to obtain his Ph.D. at an American university. In his F1 visa application, the defendant listed his occupation as "Government" and his employer as "Saudi Royal Court." Before coming to the U.S. for education, the defendant worked for the KSA government, and his father is the equivalent of a U.S. Senator in the KSA.

While living in the United States, the defendant used various social media accounts to attack Saudi political dissidents and their loved ones over the internet. The defendant's online harassment campaign was frequently directed at individuals, typically women, who voiced opposition to the KSA. As part of the Federal Bureau of Investigation's ("FBI") investigation into the online harassment, agents interviewed the defendant three times to determine if he was the user of the social media accounts harassing the victims. In each interview, the defendant lied to the FBI and concealed that he was the user of the social media accounts.

For his conduct, the defendant was charged with making false statements to the FBI in violation of Title 18, United States Code, Sections 1001(a)(1) and 1001(a)(2), a felony offense which carries the collateral consequence of removal from the United States. On October 27, 2022, the defendant pled guilty before the Honorable Magistrate Judge Ramon E. Reyes pursuant to an Information to this charge and consented to his removal from the United States at the conclusion

of any sentence. The motion to accept the defendant's plea and enter a judicial order of removal is pending before the Court. See ECF No. 26.

A. The Defendant Repeatedly Attacked Saudi Dissidents Over the Internet

Since at least 2017, while receiving an education in the United States paid for by the KSA government, the defendant used multiple pseudonymous social media accounts to harass individuals he perceived to be political opponents of the KSA government.

For example, the defendant used his pseudonymous Instagram account "@samar16490" (the "Samar Account") to harass Victim-1, a KSA dissident who moved to the United States and later petitioned for asylum out of fear that Victim-1 would be killed if Victim-1 returned to Saudi Arabia. Victim-1 told law enforcement agents that Victim-1's father made a request for family members to kill Victim-1. Victim-1 also told law enforcement agents that Victim-1 is a social media influencer who frequently posts opinions about policy issues, including posts directly critical of the KSA. In or about February 2020, in response to a post by Victim-1, the defendant commented: "plenty of headache and dirt, I hope you will have the same fate/end up as Nada al-Qahtani."[1] "Nada al-Qahtani" is the name of a Saudi Arabian woman who was shot and killed by her brother in the KSA. Media reporting on al-Qahtani's death stated that the murder was possibly an "honor killing," which is a killing committed by a male family member, similar to what Victim-1's father sought with respect to Victim-1. The defendant also sent messages to Victim-1 calling Victim-1 a "whore" and stating that he wanted to spit on Victim-1.

Similarly, between January 2020 and August 2020, using the Samar Account, the defendant sent multiple public and private messages to Victim-2, the spouse of a Saudi blogger who was jailed in 2012 for "insulting Islam." Victim-2 subsequently fled the KSA while Victim-2's spouse was in jail. Some of the defendant's messages to Victim-2 are listed below:

| **Message Date** | **Type of Message** | **Message** |
|---|---|---|
| 2020-01-24 | Public Comment | A dog who got what he deserves, I hope they will jail/put you in prison too |
| 2020-01-28 | Public Comment | I am spitting on this face |
| 2020-03-07 | Public Comment | he was never released from prison, you whore. |
| 2020-04-05 | Public Comment | May God save us from evil and evil deeds |
| 2020-04-19 | Direct Message | Fuck you! |
| 2020-05-10 | Public Comment | may God curse you and [spouse], you whore |
| 2020-08-20 | Public Comment | May God curse you, you dirty one |

More recently, in June 2022, Victim-2 was in a car accident and posted a picture of the wreckage on Instagram. In response to the post, the defendant publicly commented "I wish you had died. I would be free from your hatred against our country." Victim-2 informed law enforcement agents that while Victim-2 frequently receives harassing messages online due to her

[1] Unless otherwise indicated, all quoted statements are draft verbatim translations of statements that were originally written in Arabic.

status as a Saudi dissident, the vitriol and frequency of the defendant's messages stood out.

Between July and October 2020, the defendant used the Samar Account to harass Victim-3, a Saudi dissident, and Victim-4, the Saudi dissident's former fiancé. Some of the defendant's messages to Victim-4 include the following:

| **Message Date** | **Type of Message** | **Message** |
|---|---|---|
| 2020-07-15 | Direct Message | Do you think you going to be safe with here [in English] |
| 2020-07-18 | Direct Message | Your mother fucker [in English] |
| 2020-08-05 | Direct Message | Fuck you [in English] |
| 2020-10-28 | Public Comment | may God forgive me |
| 2020-10-28 | Public Comment | I am spitting on your face |

Victim-4 told law enforcement agents that Victim-4 eventually blocked the Samar Account, but began receiving more threatening message from similarly named accounts. Victim-4 further stated that the online attacks from the Samar Account interfered with Victim-4's business and caused Victim-4 serious mental health issues.

The defendant further harassed Victim-5 in approximately September 2020 after Victim-5 defended Victim-3 from online attacks. After Victim-5 stood up for Victim-3, the defendant sent Victim-5 harassing direct messages using the Samar Account, including the following:

| **Message Date** | **Message Type** | **Message** |
|---|---|---|
| 2020-09-18 | Direct Message | I swear I am going to kick your ass. |
| 2020-09-19 | Direct Message | You slut, I am going to teach you a lesson! |
| 2020-09-19 | Direct Message | If you have not been raised well by your family, we will discipline you. |
| 2020-09-19 | Direct Message | And this [Victim 3], who you are defending, you will be hearing news about her. You will wish that you had died before hearing such news. |
| 2020-09-19 | Direct Message | I swear we will wipe you off the face of the earth! |
| 2020-09-19 | Direct Message | Soon, I will know where you are and get you, bitch. |
| 2020-09-19 | Direct Message | Fine, go ahead and make fun of me. Let me see how smart you are when we get our hands on you. |
| 2020-09-19 | Direct Message | You'll see, bitch, who is going to do as he pleases. |
| 2020-09-19 | Direct Message | I swear I will not let you be. |
| 2020-09-19 | Direct Message | See [what happened to] Amal Al Asmary[2] |

---

[2] Amal Al Asmary" is a reference to Dr. Amal Alasmari, a Saudi woman who was seen in public without an abaya and, according to open-source reporting, was believed to have

| | | |
|---|---|---|
| 2020-09-19 | Direct Message | Soon, you will face the same fate. |
| 2020-09-19 | Direct Message | along with [Victim-3] |
| 2020-09-19 | Direct Message | Oh, are you accusing the government while you are in Saudi Arabia? |
| 2020-09-19 | Direct Message | MBS[3] will wipe you of the face of the earth, you will see. |
| 2020-09-19 | Direct Message | I will teach you a lesson. |
| 2020-09-19 | Direct Message | You will face the same fate as Amal Al Asmary |
| 2020-09-19 | Direct Message | And remember what I said. |
| 2020-09-19 | Direct Message | Be careful and do not cross your boundaries. |
| 2020-09-19 | Direct Message | This is the last time I see you do this. I do not want to see a comment from you defending [Victim-3] and the likes. |
| 2020-09-19 | Direct Message | If you do it again, do not blame anyone, but yourself. |
| 2020-09-19 | Direct Message | Go make a comment on [Victim 3]'s account. |

In addition, beginning in approximately 2019, the defendant used the Samar Account to harass Victim-6, a vocal Saudi dissident. The defendant sent Victim-6 multiple messages attempting to set up a meeting and indicating that he knew where Victim-6 was located based on Victim-6's Instagram posts.

B. The Defendant's Material False Statements to the FBI

Based on the messages above and others like it, the FBI began investigating the user of the Samar Account for harassing KSA dissidents online. On three separate occasions between June 2021 and January 2022, the defendant participated in voluntary interviews with FBI agents as part of the FBI's investigation into the Samar Account and the harassment of KSA

---

been arrested as a result. An abaya is a loose-fitting, full-length robe symbolic of Islamic piety. Prior to 2019, KSA required females to wear an abaya in public.

[3] "MBS" is a reference to Mohammed bin Salman Al Saud, the Crown Prince of KSA.

dissidents by individuals based in the United States. In two of the interviews, the defendant was specifically informed that it is a crime to lie to the FBI. In each of the three interviews, the defendant lied and claimed that he did not have or use any social media accounts other than accounts in his own name, when, in fact, he used the Samar Account to attack Saudi dissidents online.

Notably, even after the defendant's last interview with the FBI in January 2022, the defendant continued to use the Samar Account to send threatening messages to Saudi dissidents, demonstrating the fact that he was undeterred by the investigation and the FBI's questioning of him.

C. The Defendant's Arrest and Time in Custody

On or about June 27, 2022, the defendant was arrested at Dulles International Airport before boarding a flight to return to the KSA and charged by complaint with violating 18 U.S.C §§ 1001(a)(1) and 1001(a)(2). The defendant was taken into custody and, on or about July 1, 2022, a district court in the Eastern District of Virginia ordered the defend detained pending his removal to the Eastern District of New York. See 22-MJ-164 (E.D.Va.). On or about August 1, 2022, after arriving in New York, the defendant was released on a $500,000 bond secured by three sureties, property, and $20,000 in cash, as well electronic monitoring, among other conditions. In total, the defendant was in custody for approximately 35 days, from June 27, 2022 to August 1, 2022. Pretrial Services informed the government that the defendant has thus far complied with the conditions of his pre-trial release.



[redacted]

II. Applicable Law

Title 18, United States Code, Section 3553(a) requires a sentencing court to "determine in each case what constitutes a sentence that is 'sufficient, but not greater than necessary,' to achieve the overarching sentencing purposes of 'retribution, deterrence, incapacitation, and rehabilitation.'" Rosales-Mireles v. United States, 138 S. Ct. 1897, 1903 (2018) (quoting 18 U.S.C. § 3553(a) and Tapia v. United States, 564 U.S. 319, 325 (2011)). "[I]n determining the particular sentence to be imposed" the Court is required to consider both the sentencing factors set forth at § 3553(a)(2), as well as the sentencing range established by the Sentencing Commission for the applicable category of offense and offender. See 18 U.S.C. § 3553(a)(4).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –

---

[redacted]

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct; [and]
>
> (C) to protect the public from further crimes of the defendant.

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

III. Sentencing Guidelines

Applying the U.S. Sentencing Guidelines Manual to the facts detailed above, the Guidelines advise the Court to sentence the defendant to 0 to 6 months' imprisonment, which is reflected below:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2B1.1(a)(2)) | 6 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Total: | 4 |

The defendant does not have any prior criminal convictions, and thus his criminal history is Category I. At Criminal History Category I, an offense level of 4 carries an advisory Guidelines sentencing range of 0 to 6 months' imprisonment.

IV. The 18 U.S.C. § 3553(a) Sentencing Factors

The government respectfully submits that the Guidelines in this case are 0-6 months and that a sentence within the Guidelines, including a sentence of time-served, may be appropriate based on a consideration of the 3553(a) factors set forth in Title 18, Untied States Code, Section 3553(a).

The defendant's conduct is serious. For over five years, the defendant used various social media accounts to harass Saudi dissidents and their loved ones over the internet. Under the cover of anonymity, while benefiting from the educational opportunities the United States has to offer, the defendant repeatedly tormented his victims online. Many of the defendant's victims put themselves in great danger to escape persecution in the KSA and continued to risk their lives by publicly speaking out against the KSA's persecution of women, minorities, and those who stand up to government oppression. Several victims told the government how the defendant's online attacks impacted their lives and caused them to fear going about their everyday activities. To cover

up this conduct, the defendant then lied to the FBI, despite being instructed that it was a crime to make a false statement. The defendant's false statements to the FBI show that the defendant knew what he was doing was wrong. Yet, even after lying to the FBI, the defendant continued to harass victims online.

While the defendant's conduct is serious, based on the defendant's actions since his arrest, the government believes that the defendant has been deterred from committing future online attacks and making false statements to U.S. law enforcement agents. First, as noted above, the defendant has already served a little more than a month in custody. While this is not a substantial amount of time in the abstract, it is still significant and within the Guidelines range for the defendant's criminal offense. The defendant is also facing serious collateral consequences for his conduct, including immediate removal from the United States (and the likelihood that he will not be permitted to return in the future).



Lastly, the defendant's felony conviction and the time he already has served in prison promotes general deterrence. The defendant's conviction, and the serious collateral consequence of removal from the United States, has sent a message to intolerant regimes and their supporters that those who evade United States laws, harass individuals from within our borders, and lie to law enforcement about it will be prosecuted, punished, and removed from the country.

V. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence within the Guideline range of 0-6 months, with the serious collateral consequence of removal from the United States, is appropriate based on a consideration of the Section 3553(a) factors.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By: /s/ Sara K. Winik
Craig R. Heeren
Sara K. Winik
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (EK) (by ECF and Email)
Defense Counsel (by ECF and Email)

# Exhibit A



