# KRIEGER KIM & LEWIN LLP

500 Fifth Avenue  
New York, NY 10110

Telephone: (212) 390-9550  
www.KKLllp.com

November 4, 2022

**By ECF**

The Honorable Eric Komitee  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

              Re:    *United States v. Ibrahim Alhussayen*, 22 Crim. 471 (EK)

Dear Judge Komitee:

      As Your Honor knows, we represent Ibrahim Alhussayen in the above-captioned case. We write to respectfully request that the Court impose a sentence of time-served, which we submit is consistent with and called for by the factors set forth in 18 U.S.C. § 3553(a)[1] and the interests of justice. Notably, the government agrees that a sentence of time-served may be appropriate in this case.

      As the Court will hear, Ibrahim has readily accepted responsibility for his conduct and already spent 34 days in pretrial detention—a period well within the applicable Guidelines range. There is no need for further incarceration, either as a form of punishment or of general or specific deterrence. Moreover, even after he was released from pretrial detention, the conditions of Ibrahim's release differed from that of most bailed defendants: he has spent the last three months in a city where he has not a single friend or colleague, thousands of miles away from his ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ We ask that the Court permit Ibrahim to return to his family. Simply put, although Ibrahim committed a serious offense, additional imprisonment is not necessary to achieve a just result.

    ***I.***       ***Background and Procedural History***

      Ibrahim was arrested over four months ago, on June 27, 2022, at Dulles International Airport. He had recently completed his doctoral studies in the United States and was boarding a flight with his family to return home to Saudi Arabia permanently. Upon being approached by law enforcement, Ibrahim was cooperative and did not resist arrest. His ▓▓▓▓▓▓▓▓

---

[1] The sentencing factors outlined in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (i) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (ii) to afford adequate deterrence to criminal conduct, (iii) to protect the public from further crimes of the defendant, and (iv) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the type of sentence and range established under the United States Sentencing Guidelines; (5) any pertinent policy statement issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

November 4, 2022
Page 2 of 7

█████ who were with Ibrahim at the time, ultimately returned on that flight to Saudi Arabia where they have remained ever since Ibrahim's arrest.

On July 1, Ibrahim was presented in the Eastern District of Virginia and detained. He remained incarcerated for 34 days, awaiting his Fed. R. Crim. P. 5(c) transfer from Alexandria, Virginia to Brooklyn. Ibrahim was held in various county jails in Virginia and Oklahoma before arriving at the Metropolitan Detention Center in Brooklyn. During virtually all of his 34-days of detention, Ibrahim was not able to receive visitors and was unable to communicate with his family in Saudi Arabia.

After his arrival in the Eastern District of New York, on August 1, Ibrahim appeared before Magistrate Judge Robert Levy who granted his release on bond. Since his release, Ibrahim has remained in short-term housing in Manhattan and Brooklyn, separated from his family, apart from █████ who traveled to New York to live with Ibrahim during the pendency of this case.[2]

Promptly after his release, Ibrahim affirmatively expressed an interest in resolving this case and voluntarily offered to speak with the government. He met with the government on two occasions—September 13 and 20—during which he sat for lengthy sessions and answered every question posed by the prosecutors and FBI agents. On October 3, the government presented Ibrahim with a plea offer, which he quickly accepted. Ibrahim entered a plea of guilty before Magistrate Judge Ramon Reyes to the above-captioned Information on October 27, 2022.

### II. Ibrahim's History and Characteristics Counsel in Favor of a Time-Served Sentence (Section 3553(a)(1))

Ibrahim Alhussayen was born on █████ 1980 in a small town several hours outside of Riyadh, Saudi Arabia. He is the eldest of █████ children █████ with all of whom Ibrahim remains close today. Ibrahim grew up in a household that valued education, religion, and Saudi culture. His father was █████ and his mother was █████.

Ibrahim moved frequently throughout his childhood, not just within Saudi Arabia, but more often around the world. When he was just three years old, he moved to the United States while his father pursued a degree in higher education. Then, just a few years later, Ibrahim returned to Saudi Arabia, where he was forced to repeat kindergarten because his Arabic was not up to par. He stayed in Saudi Arabia for six years before returning to the United States so that his father could complete additional postgraduate studies. A few years after that, he returned to Saudi Arabia again to finish high school. All told, the Alhussayen family lived in Saudi Arabia, █████ within the first eighteen years of Ibrahim's life. Growing up, Ibrahim never spent more than six years in one place.

---

[2] Ibrahim's family has spent many thousands of dollars on Ibrahim's short-term housing since his release on bond.

As a result of his family's frequent relocation, Ibrahim attended numerous schools—both American and Saudi—throughout his childhood. He sometimes spent only one semester at a school before moving again. Ibrahim continually experienced culture shock, as he cycled through drastically different learning environments and communities in short periods of time. Each location had its unique challenges. For example, Ibrahim has vivid memories of the Gulf War from his time in Saudi Arabia. He recalls an Iraqi missile landing just miles from his home in Riyadh and hearing the air raids and wearing chemical masks as a precaution should disaster strike. Then, just a few years later as a sixth grader in ███████████, he recalls being bullied by his peers because of the similarity between his last name and that of Saddam Hussein.

The disjointed nature of Ibrahim's education also led to significant academic struggles throughout his life. He failed numerous subjects and even had to repeat tenth grade in Saudi Arabia. Ibrahim struggled with memorization and fared particularly poorly in math and science. He credits his mother with motivating him to continue to work hard despite his difficulties. He credits his father with providing him with the opportunities to succeed. Ibrahim is grateful for their constant support throughout his childhood.

Ibrahim could have given up on his education after high school. However, encouragement from his family inspired him to pursue a higher degree. In 2004, Ibrahim graduated from King Saud University at Riyadh with his bachelor's degree in Iranian/Persian languages. After working briefly for the Riyadh Chamber of Commerce, in 2006, Ibrahim was appointed to work as a Farsi-Arabic translator for the Saudi Arabian government, specifically at the Royal Court. He worked at the Royal Court from 2006 to 2012, at which point he sought to continue his education in the United States, as is common for many Saudi citizens. The Saudi Arabian government, through its individual departments and the Saudi Arabian Cultural Mission, offers scholarships to Saudi nationals who wish to study at a foreign university. Even today, tens-of-thousands of Saudi students are taking advantage of this funding to study abroad. In Ibrahim's case, he was fortunate to be selected by his department to receive a scholarship and was admitted to a master's program in public administration at the University of Western Kentucky. In exchange for this funding, Ibrahim is required to return to active employment for the government upon his return to Saudi Arabia for a period equivalent to the length of time that he spent abroad.

In 2016, Ibrahim graduated from the University of Western Kentucky and went on to pursue his PhD at Jackson State University in Mississippi. He graduated with a PhD in public administration in April 2022. Ibrahim is incredibly proud of his efforts to overcome his academic challenges, which ultimately led to the successful defense of his dissertation earlier this year. His dissertation addressed the impact of organizational culture on job performance at the Saudi postal service in the context of the postal service's efforts to achieve the objectives of Saudi Arabia's Vision 2030 program.[3]

---

[3] Ibrahim's research employed a mixed-method approach, incorporating a survey and in-person interviews, to investigate the insights of Saudi postal service employees and administrators. His dissertation outlined current perceptions—finding that these groups recognize the importance of organizational culture to job performance—and identified additional opportunities to improve the agency's likelihood of success in meeting its goals.

Today, Ibrahim considers reading to be one of his favorite hobbies. He enjoys reading about history and hopes to share his love of reading with ███████. Indeed, when he was a PhD student in Mississippi, Ibrahim frequented a children's bookstore near his home to buy books for them. He regularly reads to ███████ and hopes to instill in them the value of education and to motivate them to learn, just as his mother did for him.

Ibrahim's life revolves around his family. Ibrahim ███████, in 2007. ███████ encouraged Ibrahim to pursue advanced degrees abroad and left her home to live with Ibrahim while he completed his studies in the United States. They have been blessed with ███████ Ibrahim and ███████ were overjoyed by the births of their ███████

Ibrahim is a devoted father and is distraught that he is missing significant milestones in his children's lives ███████ while he remains separated from his family. He speaks to ███████ on the phone every day but misses them immensely. His children are too young to understand why their father is absent from their lives and only know that he is not home with them. They have not seen Ibrahim for over four months.

In addition to his immediate family, Ibrahim has a loving extended family at home in Riyadh. He and his siblings live in close proximity to each other. The family is therefore accustomed to spending time together nearly every day. ███████ flew to New York to support Ibrahim throughout this case and their relatives call Ibrahim ███████ almost daily. However, Ibrahim is eager to return to his life and family. His entire family is in Saudi Arabia— ███████ To that end, Ibrahim has also consented to his immediate removal from the United States upon completing any sentence that the Court may impose.[5]

### III. The Nature of the Offense, the Sentencing Guidelines, and Typical Sentences in False Statements Cases Support a Sentence of Time-Served (Sections 3553(a)(1), (3), (4), and (6))

The government has charged Ibrahim with—and he has pled guilty to—a violation of 18 U.S.C. § 1001 for false statements he made to federal law enforcement regarding his control or use of one or more social media accounts. Ibrahim admits that he lied to federal agents on three

---

[4] Due the immigration consequences associated with his guilty plea, Ibrahim will likely never be able to return to the United States ███████

[5] If Ibrahim is sentenced to a term of incarceration, after completing his sentence, he will be transferred to immigration custody where he may remain in already overstressed detention facilities for a lengthy period prior to his removal from the United States by immigration authorities. On the other hand, if the Court sentences Ibrahim to time-served, he will self-remove from the United States promptly thereafter (i.e., within 14 days) in coordination with immigration officials.

occasions. Specifically, in interviews on June 29 and July 28, 2021, Ibrahim was asked by agents to identify his social media accounts. He listed several accounts but did not include all of those that he used or controlled, including an Instagram account with the username "@samar16490" (the "Samar Account"). In a subsequent interview on January 12, 2022, Ibrahim was again asked to identify his accounts and similarly excluded certain accounts, such as the Samar Account. When asked if he had any other accounts, he falsely stated that he did not, other than the ones that he had previously disclosed. Based on Ibrahim's conduct, the parties agree that under the United States Sentencing Guidelines, Ibrahim's likely adjusted offense level is 4, which corresponds to a range of imprisonment of 0 to 6 months.[6]

The Samar Account is an Instagram account that Ibrahim set up in early 2019 and used until earlier this year. The account was registered using an email address in Ibrahim's true name and he often logged into the account from his home in Mississippi using an Internet Protocol address assigned to him at that address. Ibrahim primarily set up this account to anonymously post his political opinions, which were often controversial and targeted individuals who he fundamentally disagreed with on topics such as Saudi politics and social issues. In his free time, and often out of boredom and a woefully misdirected desire to express his disagreement with others, Ibrahim would send messages that were critical of or mocking these individuals, often using language that was crude and, as Ibrahim acknowledges, could certainly be considered threatening by the recipients. Importantly though Ibrahim never intended to hurt anyone. His goal was to mock and provoke a reaction because he disagreed with these individuals. At the time, he did not appreciate the impact that his messages could have on others. However, he now knows that his posts did in fact hurt people. He deeply regrets sending these messages and is sincerely sorry for the pain that he has caused.

Ibrahim did not disclose his ownership of the Samar Account to federal agents for two reasons. First, Ibrahim was embarrassed by the content and language of the messages that he had sent from the Samar Account. The messages were unbecoming of a person of his educational background, and he did not want others to know that he had authored them. Indeed, Ibrahim's family, including ▮▮▮▮▮▮ did not know about the Samar Account. Second, Ibrahim did not know why the agents were interested in his social media accounts but thought they would likely be seeking the accounts that he used most frequently, which he provided. Ibrahim, of course, does not ask the Court to excuse his conduct because of either of these reasons. To the contrary, he has pleaded guilty to the charged crimes. We offer them instead so that the Court may better understand Ibrahim's mindset at the time. The offense conduct represents a terrible lapse in judgment and Ibrahim has readily accepted and admitted his fault. We ask the Court to consider the entirety of Ibrahim's actions, including his acceptance of responsibility, and sentence him to time-served, which would be well within his Guidelines range of 0 to 6 months. Such a sentence

---

[6] Pursuant to U.S.S.G. § 2B1.1(a)(2), the Base Offense Level for a violation of 18 U.S.C. § 1001 is 6. If Ibrahim clearly demonstrates acceptance of responsibility, this offense level will be decreased by two levels, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 4. Ibrahim has no prior criminal convictions and therefore falls within Criminal History Category I. Criminal History Category I and an adjusted offense level of 4 corresponds to a range of imprisonment of 0 to 6 months.

would also be in line with typical sentences in 18 U.S.C. § 1001 cases, which often are limited to probation or minimal periods of incarceration.[7]

### IV.   *Additional Imprisonment is Not Necessary to Achieve Deterrence (Section 3553(a)(2))*

No additional imprisonment is needed to deter Ibrahim from having further contact with the criminal justice system. He has already spent 34 days in pretrial detention, a substantial portion of which was in solitary confinement. During this period, Ibrahim was largely unable to

---

[7] For example:

- In August 2022, Dominic Morales, a former DEA agent, was sentenced to 3 years of probation and ordered to pay a $1,500 fine for making false statements in connection with an unauthorized deconfliction query. Press Release, U.S. Dep't of Just., Office of the Inspector General, *Former DEA Special Agent Sentenced for False Statements* (Aug. 31, 2022), available at https://oig.justice.gov/news/press-release/former-dea-special-agent-sentenced-false-statements.

- In August 2019, Tammy Karasawa, a former BOP employee, was sentenced to 2 years of probation and 100 hours of community service for making false statements regarding her relationship with an inmate. Robert Boczkiewicz, *Ex-prison cook sentenced*, The Pueblo Chieftain (Aug. 5, 2019), available at https://www.chieftain.com/story/news/crime/2019/08/05/ex-prison-cook-sentenced/4533797007/.

- In December 2018, James Wolfe, the former Director of Security for the U.S. Senate Select Committee on Intelligence was sentenced to 2 months in prison, four months of supervised release, 80 hours of community service, and ordered to pay a $7,500 fine for making false statements regarding his contacts with reporters in connection with an investigation into the unauthorized disclosure of classified national security information. Press Release, U.S. Dep't of Justice, *Former U.S. Senate Employee Sentenced to Prison Term on False Statements Charge* (Dec. 20, 2018), available at https://www.justice.gov/usao-dc/pr/former-us-senate-employee-sentenced-prison-term-false-statements-charge.

- In September 2018, George Papadopoulos was sentenced to 14 days in prison, one year of supervised release, 200 hours of community service, and ordered to pay a $9,500 fine for making false statements regarding his correspondence with foreign nationals. Matthew Mosk, Kaitlyn Folmer, and Pierre Thomas, *Papadopoulos sentenced to 14 days in Russia investigation*, ABC News (Sept. 7, 2018), available at https://abcnews.go.com/Politics/papadopoulos-sentenced-russia-investigation/story?id=57658992.

- In April 2018, Alex van der Zwaan, a lawyer, was sentenced to 30 days in prison and ordered to pay a $20,000 fine for making false statements regarding work done on behalf of a foreign government and related communications. Trish Turner and Lucien Bruggeman, *Dutch lawyer sentenced in Mueller probe*, ABC News (April 3, 2018), available at https://abcnews.go.com/Politics/dutch-lawyer-sentenced-mueller-probe/story?id=54205280.

- In February 2017, David Polos, a former DEA agent, was sentenced to 1 year of probation, 250 hours of community service, and $5,300 in financial penalties for making false statements regarding his employment at, and ownership interest in, an adult entertainment establishment. Press Release, U.S. Dep't of Justice, *Former DEA Agent Sentenced for Making False Statements Regarding Employment at Adult Entertainment Establishment* (Feb. 8, 2017), available at https://www.justice.gov/usao-sdny/pr/former-dea-agent-sentenced-making-false-statements-regarding-employment-adult.

speak with his family. And since being released, he has been confined to New York City and Long Island, separated from ▮▮▮▮▮▮▮▮▮▮ who are at home in Saudi Arabia. Unlike most defendants who are out on bail, Ibrahim has been unable to be with his family, to go to work, or to see his friends. His experience has arguably been closer to a state of quasi-custody than typical pretrial release. Other than ▮▮▮▮ who has been staying with Ibrahim since his release from jail, and the undersigned lawyers, Ibrahim has not had one single in-person social interaction with a friend, colleague, or family member since he was bailed. To be sure, Ibrahim must bear responsibility for these consequences, but that does not change the fact that they have deeply affected him and constitute factors that this Court may consider in imposing sentence. There can be no question that specific deterrence has been achieved. Ibrahim fully appreciates the magnitude of lying to federal law enforcement. Moreover, as part of his plea agreement, Ibrahim has agreed not to contact any of the recipients of his messages identified by the government for three years. He does not intend to express his political views as he did in the past and his future conduct will better reflect the role model that he hopes to be for his ▮▮ children.

      Nor is incarceration necessary for general deterrence. Ibrahim's case has subjected him to life changing consequences that have been widely publicized in both the domestic and foreign press. Spending more than a month in various county-level jails, in addition to the deeply unwanted notoriety that this case has generated robustly serves the purpose of general deterrence and promoting respect for the law. *See* 18 U.S.C. § 3553(a)(2).

*   *   *

      The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a). For the reasons set forth herein, we respectfully submit that additional imprisonment would undoubtedly be greater than necessary. Importantly, the government agrees that a sentence of time-served may be appropriate. Ibrahim acknowledges the seriousness of his offense, accepts full responsibility, and will not repeat the same mistakes. We respectfully ask the Court to impose a sentence of time-served.

Respectfully submitted,<br>
KRIEGER KIM & LEWIN LLP<br>
<br>
By: _/s/ Nicholas J. Lewin_____<br>
Nicholas J. Lewin<br>
Varun A. Gumaste

cc:    AUSA Sara Winik